# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FELICIA SMITH, | | |
| REINARD SMITH | : | CIVIL DIVISION |
| Plaintiffs, | : | No: |
| | : | |
| v. | : | COMPLAINT IN CIVIL ACTION |
| MIKHAIL DAVIDOV, NATHAN DAVIDOV, | | |
| JUSTICE, AUTOSHOW, AND WESTLAKE | : | |
| FINANCIAL | : | |
| | : | JURY TRIAL DEMANDED |

COMPLAINT IN CIVIL ACTION

Reinard Smith<br>
Felicia Smith<br>
Pro se<br>
46 Bellevue Terrace<br>
Collingswood, NJ 08108<br>
Phone# (609) 222 - 5479<br>
rsmit162@student.ccp.edu

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **FELICIA SMITH,** | | |
| **REINARD SMITH** | : | **CIVIL DIVISION** |
| **Plaintiffs,** | : | **No:** |
| | : | |
| v. | : | **COMPLAINT IN CIVIL ACTION** |
| **MIKHAIL DAVIDOV, NATHAN DAVIDOV,** | | |
| **JUSTICE, AUTOSHOW, AND WESTLAKE** | : | |
| **FINANCIAL** | : | |
| | : | **JURY TRIAL DEMANDED** |

**COMPLAINT IN CIVIL ACTION**

### PRELIMINARY STATEMENT

The New Jersey Consumer Fraud Act spells out three main ways in which a merchant in the Garden State can be held liable for deceptive business practices when, the merchant conceals, omits, or suppresses any relevant detail about a product or service. For instance, consumers could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kinds of selling or advertising practices. If merchants violate a specific statute that was written into law like, the advertisement of a vehicle or other merchandise as part of a plan or scheme not to sell the item or service so advertised or not to sell the same at the advertised price. The New Jersey CFA deems doing something like this violates the above, but there is also a specific law against this in particular. Therefore, a merchant who engages in any type of false advertising, misrepresentation, fraud, false pretense, or other deception, commits an unlawful practice.

The CFA was enacted by the Legislature in 1960 intended to address widespread complaints about selling practices that victimize consumers with the sale and advertisement of merchandise and real estate. It is described as one of the strongest consumer protection statutes in the country and, the Act's provision authorizing consumers to bring their own private actions is integral to fulfilling the legislative purposes.

Consumers also, have rights under the United States federal Truth in Lending Act, which was passed in 1968 to ensure that consumers are treated fairly by businesses in the lending marketplace and are informed about the true cost of credit. The TILA requires lenders to disclose credit terms in an easily understood manner so that consumers can confidently comparison shop interest rates and conditions. Failing to perform the above, places a business in violation of consumer protection laws, and a proper claim establishing such violation, entitles the party who suffered the harm to court imposed damages.

## I. PARTIES

1. Pro se, Plaintiff, Felicia Smith, is a natural person and a citizen of New Jersey who resides at 46 Bellevue Terrace, Collingswood, New Jersey 08108.

2. Pro se, Plaintiff, Reinard Smith, is a natural person and a citizen of New Jersey who resides at 46 Bellevue Terrace, Collingswood, New Jersey 08108.

3. Defendant, Nathan Davidov (Nate), is a natural person who is located at AutoShow LLC, 879 Somerset Street, Somerset, New Jersey 08873.

4. Defendant, Mikhail Davidov (Mike), is a natural person who is located at AutoShow LLC, 879 Somerset Street, Somerset, New Jersey 08873.

5. Defendant, Justice (John Doe), is a natural person who is located at AutoShow LLC, 879 Somerset Street, Somerset, New Jersey 08873.

6. Defendant, AutoShow, LLC (AutoShow), is a corporation and licensed dealer of used motor vehicles, and located at 879 Somerset Street, Somerset, New Jersey 08873.

## II. JURISDICTION

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction over state law claims).

8. Venue is proper pursuant to 28 U.S.C § 1391(b) because a substantial part of the events that gave rise to Plaintiff's claims occurred in this district.

9. Federal courts have supplemental jurisdiction to hear state law claims against state officials sued

in their individual capacity if the federal claims arise from the same subject matter and provide the federal court with jurisdiction. 28 U.S.C. § 1367. Section 1367(a).

### III. FACTUAL ALLEGATIONS

10. On August 17, 2021, Plaintiffs, Felicia and Reinard Smith, were shopping for a used car which we wanted to purchase.

11. Originally, we were shopping for a 6 series BMW year 2010 or later, and we located one at AutoShow in which we emailed AutoShow to see if it was available and, whether we could come check it out. See **Exhibit 1.**

12. Defendant, Nathan (Nate) Davidov responded to our email, then we exchanged phone numbers and followed up with a call, Nate described the car as available and that it was in excellent condition so, we told him we would be there to possibly purchase it.

13. After we, Plaintiffs, (Felicia and Reinard), traveled more than an hour to AutoShow, we discovered that the 6 series BMW we were interested in had a crack in the front windshield; there were other things also which made us decide not to go with the BMW.

14. At this point, we (Felicia and Reinard), started looking at other used vehicles AutoShow had on their lot, given we came so far and, we were set on purchasing a vehicle so, we narrowed it down to two other vehicles that interested us.

15. We were interested in a 1 series BMW SUV and the Mercedes GL 450 4MATIC, after test driving both we decided to go with the Mercedes despite the air conditioner was not working.

16. Once we decided to go with the Mercedes, we asked Defendant Nathan (Nate) Davidov, what the selling price was, as, there was no selling price posted on the Mercedes, Nathan told us $11,500.00 plus taxes. Also, it was agreed AutoShow would fix the air conditioner at no cost.

17. Satisfied that we found the vehicle that we wanted, and it wasn't going to financially leave us struggling, we told Defendant Nathan, Let's make it happen where he said okay.

18. While checking out the vehicles, we dealt with Defendant Nathan (Nate), however, when it was time to discuss purchasing the Mercedes, we were taken to Defendants Justice (John Doe) and Mikhail (Mike) Davidov.

19. We informed Defendant Justice (John Doe), we had $6,000.00 for a down payment and the rest we would have to finance, where Defendant Justice (John Doe) got all of my (Felicia Smith) information then said the finance manager would find the best financing option for us.

20. Defendant Justice (John Doe) expressed to us, he was going to take my information to the finance manager Mikhail (Mike)so he can search for the best lender and, that he would be back with a bonafide lending offer.

21. After about 15 minutes, Defendant Justice (John Doe) came from Defendant Mikhail's office explaining to us that, the first couple of lenders were no go's but he, Defendant Mikhail, had a lender whom he was sure would approve us for financing.

22. While waiting we, Felicia and Reinard, had been having real touching discussions with Defendant Justice (John Doe) which, made us feel like Defendants were really going above and beyond, by making sure we were getting the best financing option.

23. After waiting another 7 or 8 minutes, Defendant Justice (John Doe) came out of the office telling us Plaintiffs (Felicia and Reinard), they got us approved for financing.

24. We Felicia and Reinard, were then brought into the financing office to see if we would be okay with the financing option, Defendant Mikhail (Mike) went through some numbers and gave us the final numbers at approximately $13,785.00.

25. Defendants Mikhail (Mike), Nathan (Nate), and Justice (John Doe) then escorted us to another office where they finalized the paperwork, at no time, during me Plaintiff (Felicia Smith) signing the documents, was I informed that the vehicle price was $15,488.00.

26. As everything was being finalized, we exchanged satisfactory pleasantries, and were congratulated on our new purchase; then we got the key and had to wait for the paper tag and copies of the paperwork.

27. On our farewell, Defendant Nathan (Nate) brought the paper tag and affixed to our truck, he then handed us an AutoShow envelope with copies of, the finalized paperwork wherein we left the lot.

28. Upon our arriving home, we realized the copies of the finalized paperwork consisted of about seven pieces of paper, however, the Buyers Guide was missing, also, the bill of sales, Truth in Lending Disclosures, Arbitration Agreement, understanding of warranty and dispute process agreement, Carfax report and, some other documents.

29. We were going to wait until we came in to drop off the truck to get the air conditioner fixed but, we decided to email AutoShow to find out why, we didn't get all the paperwork I, Plaintiff, (Felicia Smith) had signed? **See Exhibit 2.**

30. At that time, there was no disagreement that we weren't provided all the copies of the documents, so we did wait until we came in for the maintenance of the truck. **See Exhibit 3.**

31. August 23, 2021, we went into the office, and we spoke with Defendant Mikhail (Mike) who told us, we didn't ask for a copy of all the documents I signed and that, they didn't know we needed a copy of all the documents.

32. Defendant Mikhail (Mike), had proceeded to make the copies of the missing documents and this is when, we realized the vehicle price was different than what Defendant Nathan (Nate) told us.

33. The matter had become very vehemently debated, where we Plaintiffs (Felicia and Reinard), persisted with our that, AutoShow failed to inform us during my signing the documents the price of the Mercedes was $15,488.00.

34. AutoShow also, failed to give us a breakdown of the cost of credit, such as the rate at which we were borrowing, annual percentage rate, and total cost of everything. We protested the interest rate too.

35. August 24, 2021, we sent Defendant Mikhail (Mike) an email concerning our complaint surrounding the August 17, 2021, transaction even though he insisted he was not the person who handles the complaints. Neither was there, a contact name on the Buyers Guide, concerning who handles complaints. **See Exbibits 4.**

36. In addition to the email, we as well on August 24, 2021, sent Defendants AutoShow and Nathan (Nate) an Opt-Out of Arbitration letter by registered U.S. Postal mail. **See Exhibit 5.**

37. We Plaintiffs (Felicia and Reinard) continued attempting to, settle our dispute about the transaction which Defendants Mikhail (Mike), Justice (John Doe), Nathan (Nate), and AutoShow, LLC refused to accept any responsibility for any wrong doing or misunderstanding.

38. On August 30, 2021, we went to Defendants place of business as, we had communicated with Defendants Nathan (Nate) and Justice (John Doe), concerning what is called a "goodwill" settlement. **See Exhibit 6.**

39. The "goodwill" settlement was rejected by Plaintiffs (Felicia and Reinard) as, it required us to forgo any claim of wrongdoing in connection with the August 17, 2021, transaction.

40.     In earlier November, my husband had contacted Defendant Mikhail (Mike) in yet, another attempt at settling the matter, however, Defendant Mikhail (Mike) like our attempts earlier refused to accept any responsibility for any liability or wrongdoing.

41.     On April 7, 2022, my husband was doing a VIN# search on our 2010 Mercedes GL 450 to discover if there were any recalls we needed to know about when, an August 13, 2021, advertisement of our vehicle revealed, Defendant AutoShow, LLC had advertised our vehicle selling price as $10,995.00. **See Exhibits 7.**

42.     With this new revelation, me and my husband prepared a settlement letter, layman style, exposing to all Defendants, the advertised price of our vehicle just four (4) days prior to our purchase and, proving that the price quoted by Defendant Nathan (Nate) on August 17, 2021, was a correct quoted price. See **Exhibit 8.**

43.     Defendants responded by alleging that, because we alleged the first transaction was shady why would we want another transaction with them, and that, our presentment seemed forged because Defendants do not advertise with the company showing Defendants advertising our truck for $10,995.00. **See Exhibit 9.**

44.     My husband sent a final email response explaining, what we conducted was a VIN # check which provides a number of things about a vehicle as well as its advertised cost, so what we sent was accurate concerning what Defendants were selling our vehicle for at the time of purchase. **See Exhibit 10.**

45.     We can find nowhere, around that time when we purchased the 2010 Mercedes GL 450 4MATIC, an advertisement for that VIN number establishing a price reflecting $15,488.00. That data, $10,995.00 is what had been, the official information registered pertaining Defendants notice to consumers on this particular vehicle. We pay $344.12 per 48 months, totaling $16,517.76 plus, our $6000.00 = $22,517.76.

## COUNT I.  **TRUTH IN LENDING ACT**

46.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 45 above as if more fully set forth herein.

47. The Truth in Lending Act (**TILA**) is a federal law enacted in 1968 to help protect consumers in their dealings with lenders and creditors. The **TILA** was implemented by the Federal Reserve Board through a series of regulations. Some of the most important aspects of the act concern the information that must be disclosed to a borrower before extending credit, such as the annual percentage rate (APR), the term of the loan, and the total costs to the borrower. This information must be conspicuous on documents presented to the borrower before signing and in some cases on the borrower's periodic billing statements. See 12 CFR § 226 and 15 U.S. Code § 1601.

48. Defendants Mikhail (Mike) Davidov, Nathan (Nate) Davidov, Justice (John Doe) and, AutoShow intentionally didn't provide Plaintiffs the retail sales contract, the cost of the credit, the annual percentage rate, or the total cost of the purchase along with other disclosures Defendants are responsible for disclosing.

49. Defendants as well, intentionally didn't provide detail of the credit disclosures until about a week after the original purchase date, and still only provided minimum insight which was the amount financed.

50. Defendants Mikhail (Mike) Davidov, Nathan (Nate) Davidov, Justice (John Doe), and AutoShow had a duty to disclosure the sales contract, annual percentage rate, cost of the credit, total cost of the purchase and number of payments from Plaintiffs. We are paying $11,017.76. for $5,000.00 in credit.

51. Defendants refused to oblige, Plaintiffs request of a breakdown pertaining the total cost, percentage rate charged, annual percentage rate, also, the retail sales contract throughout the time of dispute which Defendants are obligated to disclose before signing any contract. The interest rate is also too high.

**WHEREFORE, Plaintiffs demand judgment against the Defendants (collectively) as follows:**

1. **Compensatory damages;** finance charge ($11,017.76) $22,035.52 – *Twice amount of finance charge even calculating the difference at $9,488.00 the credit charge is $7,029.76.*

2. **Lawful interest;** *as the matter dictates*

3. **For such other relief as the Court may deem equitable and just.**

## COUNT II. <u>VIOLATION OF THE CFA BY DEFENDANTS</u>
### (UNCONSCIONABLE COMMERCIAL PRACTICES)

52. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 51 above as if more fully set forth herein.

53. The **CFA, N.J.S.A.** 56:8-2, prohibits:

> "The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise ..."

54. The **CFA** defines "merchandise" as including "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." **N.J.S.A.** 56:8-1(c).

55. At all relevant times, Defendants have been engaged in the advertisement, offer for sale and sale of merchandise within the meaning of **N.J.S.A.** 56:8-1(c), specifically, used motor vehicles.

56. In the operation of the dealership's business, Defendants have engaged in the use of unconscionable commercial practices and/or misrepresentations.

57. Defendants' conduct in violation of the **CFA** includes, but is not limited to, the following unconscionable commercial practices:

> a. Failing to honor the advertised sales price of a used motor vehicle; and,
>
> b. Defendants, intent to charge Plaintiffs a high interest for the loan and cover it up by making it seem as if the cost of the vehicle was the reason for the amount of the loan was unconscionable.

58. Each unconscionable commercial practice by Defendants constitutes a separate violation of the **CFA, N.J.S.A.** 56:-2.

## COUNT III. <u>VIOLATION OF THE CFA BY DEFENDANTS</u> (MISREPRESENTATIONS)

59. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 58 above as if more fully set forth herein.

60. Defendants' conduct in violation of the **CFA** includes, but is not limited to, the following misrepresentations:

a. Misrepresenting the price of used motor vehicles (advertising prices that include misleading discounts concerning recent college graduates, military personnel and/or owner loyalty incentives);

b. Misrepresenting the warranty available on a used motor vehicle;

c. Misrepresenting the fees charged to a consumer (fee charged by financial institution);

d. Representing that they would provide vehicle license plates, title and/or registration prior to the expiration of temporary title and/or registration, but then failing to do so;

e. Representing that they would submit a service contract purchased by a consumer to the provider of the service contract, but then failing to do so;

f. Representing that they would pay off the indebtedness of a trade-in motor vehicle, but then failing to do so;

g. Representing that a used motor vehicle would pass inspection, when in fact the car had sustained significant damage that would not pass inspection (rusted out frame); and

h. Representing that they would respond to a consumer's complaint, but then failing to do so.

61. Each misrepresentation by Defendants constitutes a separate violation of the **CFA, N.J.S.A.** 56:8-2.

# COUNT IV. <u>VIOLATION OF THE CFA BY DEFENDANTS</u> (FAILURE TO DISPLAY SELLING PRICE)

62. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 61 above as if more fully set forth at length herein.

63. The **CFA** requires that persons offering merchandise for sale display the total selling price, stating:

> "It shall be an unlawful practice for any person to sell, attempt to sell or offer for sale any merchandise at retail unless the total selling price of such merchandise is plainly marked by a stamp, tag, label or sign affixed to the merchandise or located at the point where the merchandise is offered for sale."

**N.J.S.A.** 56 : 8-2.5

64. In addition, the **CFA** provides:

> "for purposes of this act, each day for which the total selling price is not marked in accordance with the provisions of this act for each group of identical merchandise shall constitute a separate violation of this act of which the act is a supplement."

> **N.J.S.A.** 56:8-2.6.

65. In the operation of the dealership, Defendants offered for sale and/or sold used motor vehicles without labeling or displaying the total selling price.

66. Defendants by not labeling the cost of the vehicle enabled Defendants to charge any price without direct evidence of a price change.

66. Each instance and each day where Defendants offered for sale and/or sold a used motor vehicle without labeling or displaying the total selling price constitutes a separate violation of the **CFA**, **N.J.S.A.** 56:8-2.5 and **N.J.S.A.** 56:8-2.6.

# COUNT V.  <u>VIOLATION OF THE CFA BY DEFENDANTS</u> (FAILURE TO PROVIDE SIGNED COPY OF DOCUMENTS)

67. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 66 above as if more fully set forth at length herein.

68. The **CFA** requires that consumers be provided with full and accurate copies of documents presented to them for signature:

> "It shall be an unlawful practice for a person in connection with a sale of merchandise to require or request the consumer to sign any document as evidence or acknowledgment of the sales transaction, of the existence of the sales contract, or of the discharge by the person of any obligation to the consumer specified in or arising out of the transaction or contract, unless he shall at the same time provide the consumer with a full and accurate copy of the document so presented for signature ... ."

> **N.J.S.A.** 56: 8-2.22.

69. Defendants failed to provide a consumer with complete copies of finance documents signed by the consumer during the purchase of a used motor vehicle.

70. This act of Defendants caused Plaintiffs to not be aware of the pricing scheme Defendants implemented to evade the loan interest limit as, Defendants hiked the cost of the vehicle to hide the unlawful interest charged on the loan.

71. Each instance where Defendants failed to provide, copies of documents signed by the consumer constitutes a separate violation of the CFA, **N.J.S.A.** 56:8-2.22.

**WHEREFORE, Plaintiffs demand judgment against the Defendants (collectively) as follows:**

1. **Compensatory damages;** *which includes-$8,488.00 the amount with interest we were charged over the original price also, $1,759.87 Plaintiffs invested into new accessories for the vehicle.*

2. **Recission;** *$9,785.32 down payment plus monthly payments*

3. **Treble Damages;** *$60,096.96 due to the multiple violations Defendants committed*

4. **Lawful interest;** *as determined by date the matter is settled*

5. **And for such other relief as the Court may deem equitable and just.**

## PRAYER FOR RELIEF

**WHEREFORE,** based upon the foregoing allegations, the Plaintiffs respectfully request that the Court enter judgment against Defendants;

(a) Finding that the acts and omissions of Defendants constitute multiple instances of unlawful practices in violation of the CFA, N.J.S.A. 56:8-1 et sec ., and the Truth in Lending Act and Regulation Z 12 CFR § 226 and 15 U.S. Code § 1601.

(b) Assessing the maximum statutory civil penalties against Defendants, jointly and severally, for each and every violation of the CFA, in accordance with N.J.S.A. 56:8-13.

(c) Finding that the acts and omissions of Defendants violate New Jersey Usury Laws.

## VERIFICATION

I, Felicia Smith, hereby state:

1. I am the Plaintiff in this action;

2. I verify that the statements made in in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief; and

3. I declare under penalty of perjury that the foregoing is true and accurate. 28 U.S.C. 1746.

_____
Felicia Smith

Dated: 8/9/2022