**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FELICIA SMITH and REINARD SMITH,<br><br>Plaintiffs,<br><br>v.<br><br>MIKHAIL DAVIDOV, *et al.*,<br><br>Defendants. | Civil Action No. 22-04998 (GC) (JTQ)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Defendants Mikhail Davidov, Nathan Davidov, Justice (John Doe)[1], Autoshow, LLC, and Westlake Financial's[2] Motion for Summary Judgment, (ECF No. 92), Plaintiffs Felicia and Reinard Smith's Motion for Summary Judgment, (ECF No. 97), and Plaintiffs' separate filing raising issues with evidence relied upon by Defendants, (ECF No. 101). Defendants opposed Plaintiffs' Motion for Summary Judgment, (ECF No. 99), as well as Plaintiffs' filing raising evidentiary issues, (ECF No. 103). Plaintiffs replied to Defendants' opposition regarding the evidentiary issues, (ECF No. 104), and filed a Motion to

[1] Plaintiffs allege "Justice" is a John Doe, as they are unaware of his full name. (ECF No. 1 ¶ 5.)

[2] Westlake Financial is a lender who provided Plaintiffs with the car loan at issue in this matter. (*See* ECF No. 92-3 ¶¶ 8-9.) They are named as a Defendant and represented by the same counsel as the other Defendants due to an "indemnification agreement with [Defendant] Autoshow." (ECF No. 26.) Westlake Financial joins in Defendants' Response submitted both "in opposition to [P]laintiffs' motion for summary judgment and in reply to [P]laintiffs' apparent opposition to [D]efendants' motion for summary judgment[,]" (ECF No. 99 at 1), as well as Defendants' response to Plaintiffs' filings raising evidentiary issues, (ECF No. 103 at 1). As such, the Court construes Defendant Westlake Financial as seeking summary judgment alongside the other Defendants.

Strike evidence relied upon by Defendants, (ECF No. 105). The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure (Rule) 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Plaintiffs' Motions are **DENIED** and Defendants' Motion is **GRANTED**.

## I. BACKGROUND

### A. Factual Background[3]

On August 17, 2021, Plaintiffs purchased a 2010 Mercedes from Defendant Autoshow, a car dealership. (ECF No. 92-3 ¶ 1; *see* ECF No. 97 at 3.[4]) It is undisputed that Plaintiffs made a deposit of $6,000.00 to purchase the Mercedes and financed the remaining purchase price. (ECF No. 92-3 ¶ 5.) According to Defendants, the total cost of the Mercedes was $17,192.48, which

---

[3] On a motion for summary judgment, the Court "draws all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party." *Jaffal v. Dir. Newark N.J. Field Off. Immigr. & Customs Enf't*, 23 F.4th 275, 281 (3d Cir. 2022) (citation modified). Local Civil Rule 56.1(a) requires parties to furnish statements of material facts on motions for summary judgment. Defendants' Statement of Material Facts is at ECF No. 92-3. Plaintiffs did not respond to Defendants' Statement of Material Facts as is required by Local Rule 56.1(a), but did file their own Statement of Undisputed Material Facts at ECF No. 97 at 3. "Although Plaintiff's failure to properly respond would normally mean that Defendant's Statement of Facts would be accepted as undisputed to the extent they did not conflict with admissible evidence, the rule is relaxed for *pro se* litigants." *Robles v. Casey*, Civ. No. 10-2663, 2013 WL 308699, at *2 n.1 (M.D. Pa. Jan. 25, 2013). As such, this Court will review the entire record instead of relying solely on Defendants' statement of facts as undisputed and derives the facts in this action from Defendants' Statement of Material Facts, (ECF No. 92-3), Plaintiffs' Statement of Undisputed Material Facts, (ECF No. 97 at 3), Defendants' response to Plaintiffs' Statement, (ECF No. 99 at 5-6), and the exhibits attached to Plaintiff's Complaint, (ECF No. 1-1). *See Calabrese v. Tierney*, Civ. No. 19-12526, 2024 WL 448303, at *1 n.1 (D.N.J. Feb. 6, 2024) ("Notwithstanding the parties' failure to comply with the Local Rules, the Court has ventured to parse the record to identify any facts in dispute."); *Videon Chevrolet, Inc. v. Gen. Motors Corp.*, Civ. No. 91-4202, 1992 WL 10468, at *1 (E.D. Pa. Jan. 16, 1992) ("The court may properly consider on summary judgment any material beyond the pleadings that would be admissible at trial."); *Coit v. Sorber*, Civ. No. 21-1568, 2025 WL 2636597, at *2 n.4 (E.D. Pa. Sep. 12, 2025) ("[I]n deciding the motion for summary judgment, this [c]ourt will consider the exhibits attached to [the p]laintiff's complaint[.]").

[4] Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

included the purchase price of the vehicle at $15,488.00, a "Documentary Service" charge of $489.00[5], a sales tax of $1,058.48, and a registration fee of $157.00. (*Id.* ¶ 1.) Plaintiffs allege that they were not informed of this price and instead were informed by Defendants of different, lower purchase prices for the Merecedes.[6] (*See* ECF No. 1-1 at 6 (August 21, 2021 email from Reinard recalling the purchase "came out to about $13,500.00 or close to that number"); *id.* at 24 (August 24, 2021 letter from Reinard stating that "the cost we first were told was $11,500.00" and Defendants "show[ed] [Plaintiffs] a cost of $13,162.00").)

Defendants represent that at the time of the purchase, Felicia signed an "Advertised Price Disclosure," confirming that she understood that third-party websites listed the Mercedes for the price of $10,995.00 but that Plaintiffs were purchasing the vehicle for $15,977.00. (ECF No. 92-3 ¶ 3; ECF No. 92-9.) Felicia also signed the "window sticker" from the Mercedes that had a purchase price of $15,650.00 crossed out by hand, as well as a Buyer's Guide stating Plaintiffs were purchasing the Mercedes as-is. (ECF No. 92-3 ¶¶ 4, 6; ECF No. 92-8 ("Window Sticker"); ECF No. 92-7 (Buyers Guide).) Defendants contend that Felicia also "authorized an electronic

---

[5] Although Defendants state this charge amounted to $498.00, (ECF No. 92-3 ¶ 1), the document they cite in support lists the charge as $489.00, (ECF No. 92-5 at 2), as does the Bill of Sale Plaintiffs filed with their Complaint, (ECF No. 1-1 at 9). Given the evidence in the record, the Court considers Defendants' recitation that this charge was $498.00 to be a scrivener's error, and considers the actual documentary service charge to be $489.00.

[6] It is well-established that "[the p]laintiff may not withstand summary judgment by resting on mere allegations in the pleadings." *Huertas v. Transunion, LLC*, Civ. No. 08-244, 2010 WL 1838410, at *3 (D.N.J. May 6, 2010). This rule applies equally to *pro se* plaintiffs. *Williams v. Oppman*, Civ. No. 20-00663, 2023 WL 3645712, at *3 (W.D. Pa. May 25, 2023), *aff'd sub nom. Williams v. Wetzel*, Civ. No. 23-2162, 2024 WL 1427582 (3d Cir. Apr. 3, 2024) (holding that even "[a] *pro se* plaintiff may not . . . rely solely on his complaint to defeat a summary judgment motion"). However, the Court may rely on exhibits attached to a plaintiff's complaint in deciding a motion for summary judgment, particularly when the plaintiff is *pro se* and his documents are "liberally construed." *Coit*, 2025 WL 2636597, at *2 n.4. The Court considers those exhibits attached to the Complaint which recount the different purchase prices allegedly offered to Plaintiffs.

signature on, and as a matter of law signed, a Retail Installment Sales Contract ('RISC')" which stated the terms and conditions of a loan Plaintiffs took out to purchase the Mercedes. (ECF No. 92-3 ¶¶ 7-8; ECF No. 92-6 (RISC).) In Felicia and Reinard's deposition, Felicia testified that although these documents bear her signature, "there wasn't a price when we purchased the car" and "there was no window sticker on the car." (ECF No. 92-13 at 38:7-15, 61:4-62:8, 63:22-65:6, 95:19-23.[7]) Reinard stated these documents, in particular the RISC agreement, were not presented at the time of purchase, and Felicia questioned at her deposition the authenticity of her ink and digital signature. (ECF No. 97 at 3; ECF No. 92-13 at 38:20-39:11, 61:4-62:8, 63:22-64:8.) Additionally, Plaintiffs allege that they were not provided with copies of all the documents from the sale when they left the dealership with the Mercedes on August 17. (ECF No. 1-1 at 6 (August 21, 2021 email from Reinard stating "I'm really trying to figure why we weren't given all the paperwork we signed for the car loan??? We have 7 pieces of paper which doesn't [sic] reflect the loan terms, we don't have the buyers guide, not even the amount of the total purchase[.]"); *id.* at 8 (message from Nathan to Reinard indicating he is "preparing all the documents for [Reinard] now").)

Defendants assert that on August 18, 2021, the day after the purchase, a representative from Westlake Financial, the holder of Plaintiffs' car loan, called Felicia to verify the terms and conditions of the sale and the loan. (ECF No. 92-3 ¶ 9.) Defendants represent that during that call, "[Felicia] confirmed the existence, terms and conditions of the purchase and of the loan, including that [Felicia] had electronically signed the RISC and understood the terms of the loan." (*Id.* ¶¶ 10-13.) Defendants provided the Court with both the audio as well as a transcript of the

---

[7] Page numbers in this exhibit, a transcript of Felicia and Reinard's deposition, refer to the internal page and line numbers stamped by the court reporter rather than the page numbers stamped by the Court's e-filing system.

call. On the call, Felicia confirms that the purchase of the Mercedes consisted of a $6,000.00 down payment in cash followed by 48 monthly installments of $344.12 and that she signed the contract electronically. (ECF No. 92-10 at 3, 4, 5.) Plaintiffs dispute the authenticity and admissibility of this call for purposes of ruling on the pending Motions. (*See* ECF Nos. 97, 101, 104, 105.)

Plaintiffs' Complaint essentially alleges that they overpaid for the Mercedes. (*See* ECF No. 1.) In support of their contention, Plaintiffs provide publicly-available documents including public searches of the Mercedes' Vehicle Identification Number, which show that the vehicle was listed for a sale price of $10,995.00 on August 13, 2021, (ECF No. 1-1 at 39, 57), and had an estimated market value of $11,887.00 on May 23, 2022, (*id.* at 63). There is no evidence in the record regarding the status of Plaintiffs' loan or the Mercedes.

**B. Procedural Background**

On August 10, 2022, Plaintiffs filed this action alleging violations of the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601-1667f, and the New Jersey Consumer Fraud Act (CFA), N.J. Stat. Ann. § 56:8-1 *et seq*,[8] (ECF No. 1 at 7-12), along with an application to proceed *In Forma Pauperis* (IFP), (ECF No. 1-3). On August 11, 2022, the Court granted Plaintiffs' application to proceed IFP. (ECF No. 3.) On their TILA claim, Plaintiffs seek compensatory damages of two times the finance charge for the purchase of the Mercedes[9] and interest, (ECF No. 1 at 8); for their CFA claims Plaintiffs seek compensatory damages of $10,247.87, including "the amount with interest

[8] The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

[9] The TILA defines a finance charge as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a). A finance charge includes interest on a loan. *Id.*; *Santiago v. E. Sav. Bank, FSB*, Civ. No. 09-1269, 2011 WL 710216, at *3 (E.D. Pa. Feb. 28, 2011) ("Interest, service charges and finder's fees are all included in the 'finance charge.'"). Plaintiffs assert the finance charge is $11,017.76. (ECF No. 1 ¶ 50.)

we were charged over the original price" and the cost of accessories Plaintiff purchased for the Mercedes, $9,785.32 in recission of Plaintiffs' down payment and monthly payments, treble damages of $60,096.96, and interest, (*id.* at 12).

On October 27, 2022, Defendants Mikhail, Nathan, Justice, and Autoshow answered the Complaint, denying Plaintiffs' allegations, asserting twelve affirmative defenses and bringing two crossclaims for contribution and indemnity against "any and all codefendants."[10] (ECF No. 11.) The parties engaged in discovery and on July 3, 2025, Defendants filed a Motion for Summary Judgment. (ECF No. 92.) On August 18, 2025, Plaintiffs also filed a Motion for Summary Judgment. (ECF No. 97.) In March 2026, Plaintiffs also filed letters challenging the authenticity and admissibility of Defendants' evidence, (ECF Nos. 101, 104), as well as a Motion requesting that the Court find Defendants engaged in fraud on the Court by fabricating evidence, strike such evidence, and impose sanctions,[11] (ECF No. 105). These Motions are fully briefed and ready to be adjudicated by the Court.

## II. <u>LEGAL STANDARD</u>

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it

---

[10] Westlake Financial adopted this answer and the affirmative defenses asserted therein. (ECF No. 26.)

[11] On May 4, 2026, Plaintiffs filed a Petition for a Writ of Mandamus with the Third Circuit, asking the Third Circuit to require this Court to rule on evidentiary issues and deny Defendants' Motion for Summary Judgment, which the Third Circuit denied on July 2, 2026. *See In re: Felicia Smith; Reinard Smith*, Civ. No. 26-2047 (3d Cir. May 4, 2026), Dkt. Nos. 1-1, 8. On July 30, 2026, Plaintiffs filed a Petition for Rehearing En Banc before the Third Circuit, which remains pending. *See In re: Felicia Smith; Reinard Smith*, Civ. No. 26-2047 (3d Cir. May 4, 2026), Dkt. No. 13.

could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* When deciding the existence of a genuine dispute of material fact, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. "[I]nferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983). The Court must grant summary judgment against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "In the face of a properly supported summary judgment motion, the nonmovant's burden is rigorous: the party 'must point to concrete evidence in the record'—mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment." *Roofer's Pension Fund v. Papa*, 687 F. Supp. 3d 604, 616 (D.N.J. 2023) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995)).

## III. DISCUSSION

### A. Evidentiary Disputes

Defendants filed a Motion for Summary Judgment, arguing that given the evidence in the record—including signed documents with the terms of the Mercedes sale, the transcript of Felicia's August 18, 2021 telephone call with Westlake Financial, and Felicia's deposition—there are no genuine issues of material fact and Plaintiffs cannot establish the necessary elements of their TILA and CFA claims. (ECF No. 92-1 at 1.) Plaintiffs have submitted several filings challenging Defendants' evidence which this Court previously indicated it would decide together with the pending Motions for Summary Judgment. (*See* ECF No. 106.) First, Plaintiffs filed a Motion for

Summary Judgment in which they ask the Court to find that evidence relied upon by Defendants—namely, the transcript of Felicia's telephone call with Westlake Financial—is not authentic or admissible. (*See* ECF No. 97 at 2, 5-7, 9.) Plaintiffs next filed two letters arguing that certain evidence relied upon by Defendants in support of their Motion—the transcript of the August 18, 2021, telephone call, and "[a]n email Defendants claim was sent on the transaction date"—cannot be authenticated and as such, cannot be relied upon for summary judgment. (ECF Nos. 101, 104.) Finally, Plaintiffs filed another Motion requesting that the Court strike the transcript and email, as well as the RISC agreement, and any of Defendants' arguments relying on that evidence; find Defendants committed fraud on the Court by fabricating this evidence; and enter sanctions against Defendants. (ECF No. 105 at 2.)

"[T]his Court is mindful of the requirement that *pro se* parties' submissions must be construed liberally." *Sec. & Exch. Comm'n v. Cooper*, 142 F. Supp. 3d 302, 311 (D.N.J. 2015). A *pro se* plaintiff's "submissions are read to raise the strongest arguments suggested therein" but such "a forgiving interpretation does not render immune from dismissal or summary judgment claims that lack procedural or factual viability." *Hena v. Vandegrift*, 612 F. Supp. 3d 457, 472 (W.D. Pa. 2020) (citation modified). In light of Plaintiffs' *pro se* status, the Court construes their submissions as opposition to Defendants' Motion under Rule 56(c)(2), which prohibits a party from relying on inadmissible evidence for summary judgment.[12] *See Anglin v. Anglin*, Civ. No.

---

[12] To the extent Plaintiffs intend their submission, styled as a "Motion for Summary Judgment," to argue that they are entitled to summary judgment under the New Jersey Uniform Electronic Transactions Act (UETA) because that statute renders this evidence inadmissible, (ECF No. 97 at 5), this argument is impermissible. The UETA "governs transactions between parties who have agreed to conduct their transaction by electronic means," *Shelton v. Restaurant.com, Inc.*, 70 A.3d 544, 556 (N.J. 2013), and provides that electronic documents and signatures can uphold a contract, N.J. Stat. Ann. § 12A:12-7. Plaintiffs argue that section 12A:12-8 of the UETA entitles them to summary judgment because they did not agree to conduct the transaction by electronic means, Defendants did not send the RISC agreement to Plaintiffs, and even if

16-04049, 2024 WL 3355303, at *1 (D.N.J. July 9, 2024) (construing ten submissions by a *pro se* plaintiff that related to the defendants' summary judgment motions as oppositions); Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). The Court also construes Plaintiffs' letters and separate Motion to Strike raising evidentiary concerns, (ECF Nos. 101, 102, 105), as additional oppositions to Defendants' Motion for Summary Judgment, *see Anglin*, 2024 WL 3355303, at *1, as well as a separate Motion to Strike, (ECF No. 105).

The Court proceeds to consider the merits of Plaintiffs' challenges to Defendants' evidence. In their oppositions, Plaintiffs argue that the recording and subsequent transcript of the August 18, 2021 telephone call between Felicia and Westlake Financial is inadmissible, not properly authenticated, and constitutes inadmissible hearsay. (ECF Nos. 97, 101, 104.) In their Motion to Strike, Plaintiffs ask the Court to strike the RISC agreement and audio recording and transcript of the August 18, 2021 telephone call as well as arguments made in Defendants' moving papers that rely on those exhibits.[13] (ECF No. 105 at 8-9.) They argue that Defendants fabricated these

---

Defendants did send the document, they did not do so in a manner capable of retention by the recipient, violating the UETA and rendering the RISC unenforceable. (ECF No. 97 at 5-7.) Courts in this district have repeatedly held that "a party may not utilize a summary judgment motion as a vehicle to raise claims not supported by the pleadings." *Lower Susquehanna Riverkeeper Ass'n v. Republic Servs. of Pa. LLC*, Civ. No. 23-00044, 2025 WL 976694, at *9 (M.D. Pa. Mar. 31, 2025) (citation modified); *see also, e.g.*, *Landano v. U.S. Dep't of Just.*, 873 F. Supp. 884, 891 (D.N.J. 1994) ("Plaintiff did not allege a Section 1983 claim in its complaint and cannot raise this on a cross motion for summary judgment."); *Bereczki v. Mansfield Twp.*, Civ. No. 03-276, 2005 WL 3454297, at *8 (D.N.J. Dec. 13, 2005) ("[T]his claim was not alleged in the complaint and cannot be raised for the first time in an opposition to a motion for summary judgment."); *Camp v. Brennan*, 54 F. App'x 78, 81 n.2 (3d Cir. 2002) ("[W]e follow the rule that a motion for summary judgment cannot be defeated by alleging claims not raised in the pleading."). Plaintiffs' Complaint does not raise a claim pursuant to the UETA and only pleads claims under the TILA and the CFA, (*see* ECF No. 1); as such, Plaintiffs cannot seek summary judgment pursuant to the UETA.

[13] Plaintiffs also request that the Court strike an "alleged email transmitting the electronic RISC," (ECF No. 105 at 8), and challenging this email in their oppositions, (*see* ECF No. 97 at 3, 6 (arguing that "[t]he first time my wife received the electronic RISC agreement, was on May 18,

exhibits to create evidence of electronic transactions that never occurred, as the exhibits cannot be authenticated without original files, proof of the chain of custody, "corroborating logs," or metadata which Defendants have not provided. (*Id.* at 6-7.) Plaintiffs also argue that Defendants committed fraud on the Court by fabricating these exhibits and making misrepresentations to the Magistrate Judge, and they ask the Court to impose sanctions on Defendants and deny Defendants' Motion for Summary Judgment. (*Id.* at 7-9.)

In response, Defendants argue that they properly authenticated their evidence by indicating their intention to call a representative of Westlake Financial, a witness with personal knowledge of the telephone call under Federal Rule of Evidence 901, and that the transcript is not inadmissible hearsay because it is a business record admissible under Rule of Evidence 803(b)(6) as well as an admission of a party opponent under Rule 802(d)(2). (ECF No. 99 at 6-8; ECF No. 103 at 4-5; *id.* at 7-8 (Defendants' amended interrogatory response indicating how they will use and introduce the transcript).)

"It is well settled that only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." *Countryside Oil Co. v. Travelers Ins. Co.*, 928 F. Supp. 474, 482 (D.N.J. 1995); *see also Mall Chevrolet, Inc. v. Gen. Motors LLC*, 99 F.4th 622, 631 (3d Cir. 2024) ("[T]he nonmoving party[] may object to the consideration of any fact within those materials that 'cannot be presented in a form that would be admissible in evidence.'") (citation omitted). However, "[a]lthough a party moving for summary judgment may only rely on evidence that would be admissible at trial, the evidence need not be in admissible form at the summary judgment stage."

---

2025; when asked to forward the August 17, 2021 email as proof, [Defendants] incontrovertibly could not do so"); ECF No. 101 at 1-2 (objecting to "[a]n email Defendants claim was sent on the transaction date but was not produced to Plaintiff until nearly two years later")). No such email appears to be attached to Defendants' Motion or otherwise in the record. As such, the Court need not consider this evidence.

*Caminiti v. Cnty. of Essex, N.J.*, Civ. No. 04-4276, 2007 WL 2226005, at *11 (D.N.J. July 31, 2007) (citing *Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 (3d Cir. 1999)). Indeed, if evidence can be authenticated and admitted at trial, then the court can consider it at summary judgment. *See Egan v. Live Nation Worldwide, Inc.*, 764 F. App'x 204, 208 (3d Cir. 2019) ("A summary-judgment motion must be supported by facts that can 'be presented in a form that would be admissible,' though the evidence need not yet be authenticated and admissible." (quoting Fed. R. Civ. P. 56(c))); *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016) (stating that a court can consider hearsay at summary judgment "if [the statements] are *capable of being admissible at trial*" (emphasis in original) (quoting *Stelwagon Mfg. Co. v. Tarmac Roofing Sys.*, 63 F.3d 1267, 1275 n.17 (3d Cir. 1995)).

Moreover, "[t]he burden to authenticate a document is 'slight,'" and the party need only make "a prima facie showing of some competent evidence to support authentication." *Egan*, 764 F. App'x at 208 (quoting *United States v. Turner*, 718 F.3d 226, 232 (3d Cir. 2013)). Similarly, the proponent of a hearsay statement need only "explain the admissible form that is anticipated." *Fraternal Order of Police*, 842 F.3d at 238 (quoting Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment). For example, in *Fraternal Order of Police*, the Third Circuit reversed the district court's exclusion of hearsay at summary judgment where "[p]laintiffs identified the third-party declarants, and nothing suggest[ed] that those declarants would be unavailable to testify at trial." *Id.* at 239. The court held this "is all that [is] required" for hearsay evidence to survive at summary judgment. *Id.*

Here, the Court will consider the electronic RISC agreement as well as the August 18th call as Defendants have made a *prima facie* showing to support authentication and admissibility. As to the telephone call, Defendants produced the audio file and transcript to Plaintiffs, (ECF No.

99-2 at 4, 6-13), and, after receiving permission from the Court to reopen discovery, (ECF No. 62), Defendants supplemented their responses to Plaintiffs' interrogatories to add that they "intend to call as a witness at the time of trial a designated representative of Westlake Financial to authenticate and explain a taped telephone confirmation conversation with Felicia Smith on or about August 18, 2021," (ECF No. 103 at 7). Given that the burden to authenticate a document is "slight" and the evidence need not yet be authenticated or admissible at this stage, *Egan*, 764 F. App'x at 208, the Court finds Defendants have made a *prima facie* showing of competent evidence to support authentication. Defendants also provided a declaration from the Westlake Financial employee which states that he has knowledge of the August 18, 2021 telephone conversation and asserts that these telephone calls are made and recorded in the ordinary course of business, (ECF No. 99-1 ¶¶ 1, 7-9), which overcomes any hearsay objection by demonstrating that these statements are "capable of being admissible at trial" as a business record.[14] *Fraternal Order of Police, Lodge 1*, 842 F.3d at 238 (citation modified); Fed. R. Evid. 803(b)(6).

As for the disputed RISC agreement, the agreement is also signed by Defendant Mikhail Davidov. (*See* ECF No. 92-6 at 8.). There is no indication that Mikhail will be unavailable to testify and authenticate Felicia's electronic signature at trial; therefore, the Court treats this evidence as capable of admission and it can be considered on summary judgment. *See Ziemkiewicz v. R+L Carriers, Inc.*, Civ. No. 12-1923, 2013 WL 505798, at *4 (D.N.J. Feb. 8, 2013) ("[P]arty witnesses are presumed to be willing to testify at trial no matter the inconvenience."); *Breker v. Hershey Foods Corp.*, Civ. No. 94-4887, 1994 WL 530146, at *2 (E.D. Pa. Sep. 28, 1994) ("Where

[14] Additionally, Felicia's statements during the telephone call qualify as an exception to hearsay because Felicia is a party opponent. Fed. R. Evid. 801(d)(2) ("A statement that meets the following conditions is not hearsay: . . . The statement is offered against an opposing party and . . . was made by the party in an individual or representative capacity[.]").

a party has not represented that a witness would be unwilling to testify, the court is not required to make such an assumption."). Further, there is circumstantial evidence supporting the authenticity of the RISC agreement, such as Autoshow's name and address printed on the agreement as well as Felicia's statement on the recorded telephone call with Westlake Financial that she "sign[ed] the contract electronically[.]" (ECF No. 92-10 at 4.) *See OFI Int'l, Inc. v. Port Newark Refrigerated Warehouse*, Civ. No. 11-06376, 2015 WL 140134, at *3 (D.N.J. Jan. 12, 2015) (finding sufficient circumstantial evidence to authenticate documents where documents included a letter on a party's letterhead, receipts with the party's name printed along the top, and work orders containing a party's logo); *id.* (collecting cases). As such, Defendants have made a *prima facie* showing that both the transcript of the August 18, 2021, telephone call and the RISC agreement are capable of admission at trial, and can be considered for purposes of Defendants' Motion for Summary Judgment.[15]

### B. Federal Truth In Lending Act (TILA) Claim

Defendants argue that they are entitled to summary judgment on Plaintiffs' TILA claim (Count I). (ECF No. 92-1 at 1.) Defendants submit that because Felicia signed the "Bill of Sale," "window sticker," "Advertised Price Disclosure," "Buyer's Guide" and RISC agreement, Plaintiffs' TILA claim is foreclosed as "[P]laintiffs cannot claim they were unaware of, or did not agree to, the price of the car, the other itemized charges, that the purchase was 'as is' or the terms and conditions of the loan." (*Id.* 92-1 at 6.) Separately, Defendants argue that Plaintiffs are not

---

[15] As part of their challenge to the admissibility of Defendants' evidence, Plaintiffs also ask the Court to find that Defendants committed fraud on the Court by "fabricating" the evidence and impose sanctions. (ECF No. 105 at 1, 7-9.) Because the Court holds that Defendants have made a *prima facie* showing of admissibility, the Court need not proceed to address these arguments as both rely upon a presumption that the Court find Defendants' evidence was fabricated and inadmissible.

entitled to damages under the TILA because they have not satisfied the elements for actual or statutory damages under the Act. (*Id.* at 7-9 (citing 15 U.S.C. § 1640).) Plaintiffs do not specifically respond to these arguments, but as part of their challenges to the authenticity and admissibility of Defendants' evidence, Plaintiffs argue that summary judgment should be granted in their favor because without that challenged evidence, it is "undisputed" that Plaintiffs only signed a "paper RISC without TILA disclosures[.]" (ECF No. 105 at 9.)

The purpose of the TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). The TILA is "a remedial statute which was designed to put the consumer on an equal footing with the lender." *Milledge v. Chase Bank, USA, N.A.*, Civ. No. 07-4128, 2007 WL 4179847, at *2 (E.D. Pa. Nov. 26, 2007). It imposes "strict liability in favor of the consumers when mandated disclosures have not been made." *Smith v. Fid. Consumer Disc. Co.*, 898 F.2d 896, 898 (3d Cir. 1990) (citing 15 U.S.C. § 1640(a)). "Section 1640(a) provides the method of calculating damages for TILA violations, and allows for actual and statutory damages." *Warburton v. Foxtons, Inc.*, Civ. No. 04-2474, 2005 WL 1398512, at *8 (D.N.J. June 13, 2005).

Plaintiffs do not specify which sections of the TILA Defendants are alleged to have violated. Rather, Plaintiffs assert that Defendants had "a duty to disclos[e] the sales contract, annual percentage rate, cost of the credit, total cost of the purchase and number of payments from Plaintiffs." (ECF No. 1 ¶ 50.) Construing Plaintiffs' filings in the light most favorable to them, *Cooper*, 142 F. Supp. 3d at 311; *Hena*, 612 F. Supp. 3d at 472, the Court construes Plaintiffs as

alleging violations under sections 1632(a) and 1638(a) of the TILA, which requires certain disclosures for credit transactions like Plaintiffs' car loan.[16]

Defendants argue that Plaintiffs' claim must fail because "the evidence clearly shows that they received the RISC and were well aware of the terms of their loan." (ECF No. 92-1 at 9.) The record before the Court supports Defendants' assertion. The RISC agreement includes a "Truth-in-Lending Disclosure" on the first page, which provides the disclosures Plaintiffs allege were not provided, including the annual percentage rate, amount financed, total of payments, number and amount of payments, and the total sale price of the Mercedes. (ECF No. 92-6 at 1.) The RISC agreement also features Felicia's digital signature in several places, time stamped for 6:42 p.m. on August 17, 2021, the day the Mercedes was purchased. (ECF No. 92-6 at 4, 8 (Felicia's signature appears below the statement, "[b]y signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it").)

The TILA provides, however, that evidence of a signature "does no more than create a rebuttable presumption" that such disclosures were made to the consumer. 15 U.S.C.A. § 1635(c). Therefore, Felicia's electronic signature on the RISC agreement creates only a presumption of disclosure that can be overcome by Plaintiffs. And the Third Circuit has held that "the testimony of a borrower alone is sufficient to overcome the TILA's presumption of receipt," so long as that testimony is based on personal knowledge and directed at a material issue. *Cappuccio v. Prime Cap. Funding LLC*, 649 F.3d 180, 189-90 (3d Cir. 2011), *as amended* (Sep. 29, 2011).

---

[16] A car loan is a closed-end loan falling under section 1638(a) of the TILA. *Puente v. Navy Fed. Credit Union*, Civ. No. 25-0417, 2025 WL 992690, at *3 n.4 (E.D. Pa. Apr. 2, 2025); *see also Stern v. Rocket Mortg., LLC*, 666 F. Supp. 3d 234, 241 (E.D.N.Y. 2023) ("A closed-end credit transaction is one where the finance charge is divided into the term of the loan and incorporated into time payments, and includes a completed loan such as a mortgage or car loan." (citation modified)); 12 C.F.R. § 1026.18 (disclosure requirements for closed-end credit).

Here, Felicia testified at her deposition that she did not authorize her signature on the RISC agreement nor does she recall seeing the agreement at the time Plaintiffs purchased the Mercedes, (ECF No. 92-13 at 64:1-8), and filed a Declaration also stating she "never agreed to electronically sign a RISC agreement," (ECF No. 98). Normally, the Court must credit this testimony, which would overcome the TILA presumption that Plaintiffs received the necessary disclosures and prohibit summary judgment for Defendants. *See Walker v. Heller*, Civ. No. 15-580, 2017 WL 4786557, at *7 (D.N.J. Oct. 24, 2017) ("At summary judgment the [c]ourt may not make credibility determinations and must accept [the p]laintiff's somewhat unlikely version of events.") However, Felicia's testimony is not the only evidence before the Court. Defendants have produced the audio recording of the telephone call between Felicia and Westlake Financial the day after the purchase during which Felicia confirms she signed the RISC agreement electronically:

> Westlake: Okay, great. Thank you. While you were at the dealer buying your car did you participate and sign the contract electronically?
>
> Ms. Smith: Yes.

(ECF No. 92-10 at 4.) Felicia also confirms the $6,000.00 down payment that was made as well as the 48 monthly installment payments due under the loan in the amount of $344.12. (*Id.* at 3, 5.)

Where deposition testimony is contradicted by other evidence, the court need not accept that testimony as true on summary judgment. *See Reich v. Schering Corp.*, Civ. No. 07-1508, 2009 WL 3230361, at *10 (D.N.J. Sep. 30, 2009), *aff'd sub nom. Reich v. Schering Plough Corp.*, 399 F. App'x 762 (3d Cir. 2010) ("For purposes of ruling on a motion for summary judgment, deposition testimony and affidavits, if not contradicted by other evidence, may be accepted as true without an assessment of the credibility of the witness." (citation modified)); *McCready v. Unity Sober Living Homes, LLC*, Civ. No. 24-2226, 2025 WL 1953274, at *6 (E.D. Pa. July 16, 2025) ("When testimony is 'blatantly contradicted by the record,' [the court] 'should not adopt that

version of the facts for the purposes of . . . summary judgment.'" (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007))). Given the evidence before the Court, Plaintiffs have not established a genuine dispute of material fact that Plaintiffs received the TILA disclosures pursuant to the RISC agreement. Therefore, summary judgment must be granted in favor of Defendants on Plaintiffs' TILA claim.

**C. State Law Consumer Fraud Act (CFA) Claims**

Plaintiffs bring four separate claims under the CFA, alleging that Defendants: engaged in unconscionable commercial practices in violation of N.J. Stat. Ann. § 56:8-2 (ECF No. 1 ¶¶ 52-58 (Count II)); made misrepresentations to Plaintiffs in violation of N.J. Stat. Ann. § 56:8-2 (*id.* ¶¶ 59-61 (Count III)); failed to display the selling price of the car in violation of N.J. Stat. Ann. §§ 56:8-2.5, 56:8-2.6 (*id.* ¶¶ 62-66 (Count IV)); and failed to provide Plaintiffs with a signed copy of documents in violation of N.J. Stat. Ann. § 56:8-2.22 (*id.* ¶¶ 67-71 (Count V)). Defendants also seek summary judgment as to these claims. (ECF No. 92-1 at 6-7, 9-13.) However, it is within the Court's discretion to decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367 when the Court has resolved all claims over which it has original jurisdiction. *Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 567 (3d Cir. 2017); *see also Meehan v. Taylor*, Civ. No. 12-4079, 2014 WL 5743280, at *7 n.6 (D.N.J. Nov. 5, 2014) (collecting cases). Because the Court awards summary judgment for Defendants on the sole federal claim, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims and those claims will be dismissed subject to refiling in state court.[17]

[17] Because Plaintiffs and Defendants are both citizens of New Jersey, there is also no basis for diversity jurisdiction. (ECF No. 1 ¶¶ 1-6.)

"The Third Circuit has held that, where all federal claims are dismissed before trial, the district court *must* decline to decide the supplemental state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *E.K. v. River Dell Reg'l Sch. Dist. Bd. of Educ.*, Civ. No. 11-00687, 2015 WL 1421616, at *6 (D.N.J. Mar. 26, 2015) (citation modified). When "all federal claims are subject to dismissal, the court should not exercise jurisdiction over remaining claims unless 'extraordinary circumstances' exist." *City of Pittsburgh Comm'n. on Hum. Rels. v. Key Bank USA*, 163 F. App'x 163, 166 (3d Cir. 2006) (quoting *Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187, 195 (3d Cir.1976)). The Court finds that no such extraordinary circumstances exist here. Although the parties conducted discovery before this Court "the Third Circuit has 'determined that substantial time devoted to the case and expense incurred by the parties do not constitute extraordinary circumstances.'" *River Dell*, 2015 WL 1421616, at *7 (quoting *City of Pittsburgh Comm'n. on Hum. Rels.*, 163 F. App'x at 166) (dismissing state law claims in 2015 for case pending since 2011). While the Court is mindful that a dismissal of Plaintiffs' state law claims will delay a decision on the remaining summary judgment issues, "the facts developed during discovery and the parties' arguments raised in their briefing will remain the same in state court." *Vartelov v. Montgomeryville Acura*, Civ. No. 21-5226, 2023 WL 3060765, at *7 (E.D. Pa. Apr. 24, 2023) (dismissing state law claims in 2023 for case pending since 2021). Furthermore, the Court has not yet considered the merits of Plaintiff's state law claims (or any claims), as prior orders and opinions have focused largely on discovery disputes. (*See* ECF Nos. 62, 66, 70, 74.)

Additionally, any considerations of fairness and convenience to the parties are outweighed by the fact that Plaintiffs' claims present significant questions of state law in whether Defendants' alleged acts constitute unlawful conduct under the CFA. It is well-established that "needless

decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) (citation modified). Dismissing the remaining state law claims will serve the goals of judicial economy and comity by allowing New Jersey courts to apply New Jersey law to this dispute between two New Jersey citizens. *Vartelov*, 2023 WL 3060765, at *7. Given that the outstanding issues in this case require interpretation and application of state law, and that a "strong policy exists in favor of resolving state law issues in state courts," the Court declines to exercise supplemental jurisdiction over the remaining state law claims and therefore dismisses Counts II, III, IV, and V, without prejudice to these claims being refiled in state court. *Shaffer v. Bd. of Sch. Directors of Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir. 1984); *see also Robert W. Mauthe, M.D., P.C. v. Optum, Inc.*, 925 F.3d 129, 135 (3d Cir. 2019) (affirming district court's discretion to decline supplemental jurisdiction after resolution and award of summary judgment on all federal claims); *River Dell*, 2015 WL 1421616, at *7 (dismissing state law claims after granting summary judgment on federal claim). As such, the Court does not reach Defendants' arguments as to why they are entitled to summary judgment on these state law claims.

## IV. CONCLUSION

For the foregoing reasons, and other good cause shown, Plaintiffs' Motion for Summary Judgment (ECF No. 97) and Motion to Strike (ECF No. 105) are **DENIED** and Defendants' Motion for Summary Judgment (ECF No. 92 ) is **GRANTED in part** and **DENIED in part**. An appropriate Order follows.

Dated: August 4, 2026

Georgette Castner

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE